**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
                                                                        :
STEWART B. HERMAN,                                                       :
                                                                        :
        Plaintiff,                                                      :
                                                                        :
        v.                                                              :
                                                                        :
                                                                        :
KATTEN MUCHIN ROSENMAN LLP, NOAH S. HELLER, :
AND MICHAEL I. VERDE,                                                    :
                                                                        :
        Defendants.                                                     :
——————————————————————————————x

Case No. 1-25-cv–03162-JHR-RWL

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTIONS**

**UNDER FED. R. CIV. P. 72(a) TO MAGISTRATE JUDGE LEHRBURGER'S**

**DECISION AND ORDER DATED AUGUST 27, 2025**

**Introduction**

      Plaintiff Stewart Herman, proceeding *pro se*, respectfully submits these objections pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A) to Magistrate Judge Lehrburger's Decision and Order dated August 27, 2025 (Dkt. 22) (the "Decision and Order"), in which, without holding a hearing on the motion, Magistrate Judge Lehrburger denied Defendants' motion to compel arbitration but stayed this action anyway. The Decision and Order is "clearly erroneous or contrary to law" for the following reasons:

1

•Magistrate Judge Lehrburger erred in not holding a summary jury trial to determine whether Defendants waived arbitration and/or were not entitled to a stay of this action as a result of Defendants' refusal to arbitrate and their litigation conduct, thereby violating Sections 3 and 4 of the Federal Arbitration Act as interpreted by Second Circuit courts.

•Having ruled that whether the Defendants waived arbitration was a question for an arbitrator, Magistrate Judge Lehrburger decided the question anyway, in favor of the Defendants, thereby tainting any arbitrator's potential decision.

•Magistrate Judge Lehrburger improperly made findings of fact regarding the Defendants' conduct during the crucial period March 2023 to August 2023 in favor of the Defendants based solely on the affidavit of counsel to the Defendants, a person not competent to give such an affidavit.  In so doing, Magistrate Judge Lehrburger tainted any arbitrator's potential decision of the waiver question and the Plaintiff's substantive claims.

•Magistrate Judge Lehrburger improperly stayed this action despite not having the power to compel arbitration.  Therefore Magistrate Judge Lehrburger improperly paused the Plaintiff's motions to disqualify counsel to the Defendants, to supplement the Complaint, and for a pretrial conference.

**Standard of Review**

Under Rule 72(a), a district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." A finding is "clearly erroneous" when the reviewing court is left with the definite and firm conviction

that a mistake has been committed. An order is "contrary to law" when it fails to apply or misapplies relevant statutes, case law, or rules.

**Objections**

***1. Defendants' voluntary participation in adjudicative proceedings before administrative agencies in lieu of moving a district court to order arbitration constitutes litigation conduct. The Second Circuit requires that a district court rather than an arbitrator determine if litigation conduct constitutes a waiver of arbitration.***

Magistrate Judge Lehrburger erred by failing to recognize that Defendants' conduct in the Plaintiff's case before the Equal Employment Opportunity Commission ("EEOC"), the Employee Benefits Security Administration ("EBSA"), and the New York State Division of Human Rights ("NYSDHR") before the filing of the Complaint amounted to substantive litigation activity. Defendants filed answers to Plaintiff's administrative complaints, engaged with the merits of the allegations, and thereby availed themselves of adjudicative processes analogous to court litigation. Magistrate Judge Lehrburger did not discuss this conduct at all in his opinion. He discussed only the non-litigation conduct (discussed further in later sections) when he determined that the Defendants' waiver of arbitration was a question for the arbitrator.

Magistrate Judge Lehrburger found that the Second Circuit has held that when parties to a dispute have broadly agreed to arbitrate their dispute, the arbitrator is the proper individual to determine if the party seeking arbitration has waived its right to arbitration, with one exception: the court, and not the arbitrator, must make that determination if *"the party seeking arbitration has participated in litigation on the*

*dispute."*  Decision and Order, page 5.  The court makes the determination in cases where the party against whom the waiver is sought engaged in "forum shopping" –i.e. availing oneself of a new forum after having gotten unsuccessful results in another. Id.

As this Court stated in Pacelli v. Augustus Intelligence, Inc., 459 F. Supp.3d 597 (S.D.N.Y. 2020), a case cited by Magistrate Judge Lehrburger (internal citations removed):

"*... litigation-conduct waiver focuses on "the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." "Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." As noted above, those issues implicate the unique expertise and interest of the courts.  ...  The reasons why a party might have "waived" arbitration by engaging in litigation-related conduct demonstrate that it is the court—and not an arbitrator—who should determine whether the prerequisites of a waiver finding have been satisfied. Indeed, it is difficult to see how it could be otherwise. The doctrine is based on prejudice from litigation and the interest of the courts in preventing their processes from being used improperly.*"

As discussed in detail in the Complaint (Dkt. 1) and in Plaintiff's Opposition (Dkt. 17 – 19) to Defendants' motion to compel arbitration, in August 2023 the Defendants fired the Plaintiff.  That month the Plaintiff filed complaints with the EEOC, the NYSDHR, and  EBSA, claiming age discrimination, deprivation of pension, coercion, retaliation and fraud, largely the claims set forth in the Complaint.  Pursuant to statute, each agency promptly notified the Defendants of the Plaintiff's complaint and requested a substantive response (called a "Position Statement") to the Plaintiff's allegations of law and facts.  At that point, the Defendants could have filed a motion in an appropriate federal district court for an order to compel arbitration under Section 20 of the Katten

partnership agreement. They did no such thing. Instead, the Defendants provided detailed, substantive Position Statements answering Plaintiff's complaints, and in the case of the NYSDHR, two separate Position Statements. The Defendants' Position Statements are set forth as exhibits to the Plaintiff's affidavit submitted to this Court concurrently herewith. In the Position Statements, the Defendants moved the respective agency to immediately dismiss the Plaintiff's complaint on the following grounds: (i) as a partner, Plaintiff was not an "employee" and therefore not entitled to the protection of federal or state anti-discrimination law, (ii) the Defendants had not discriminated against the Plaintiff or otherwise broken any laws and had only been exercising sound business judgment in terminating his practice group and him, and (iii) the Katten partnership agreement gave the firm the express right to terminate a partner with or without cause. The agencies refused the Defendants' requests to dismiss the Plaintiff's complaints.

The Defendants confirm having substantively participated in the litigation. In paragraph 10 of his Declaration (Dkt. 15), Brian Muldrew, counsel to the Defendants, states:

> "Over the ensuing months, the Firm submitted responses to both agencies explaining that Plaintiff was not a covered employee under the employment statutes due to his status as a Capital Partner, and describing legitimate nondiscriminatory business reasons for its actions."

The reason the Defendants did not immediately move for an order compelling arbitration is that an arbitrator might have awarded damages, with limited rights for the Defendants to appeal. Instead they chose the lower-risk strategy to first seek to have the agencies dismiss Plaintiff's complaints. If they won, they would have dealt a significant blow to the Plaintiff's charges. If they lost, that would not be so bad because there would

still not be an award of damages or other relief.   On June 6, 2024, Katten partner Julie

Gottshall sent the Plaintiff an email that included the following (highlighting  added):

> *"Regarding settlement discussions, the Firm believes we can most productively discuss resolution of your claims in the context of mediation.  As you pointed out, Section 20 of the Partnership Agreement (attached) anticipates mediation prior to any arbitration hearing, and the Firm will be invoking arbitration if the NYDHR proceedings continue beyond the investigation stage.  As such, it makes sense to utilize mediation now. "*

Plaintiff's affidavit (Dkt. 19– 2).

This email shows unequivocally that the Defendants deliberately held back on

moving for arbitration until they exhausted their efforts to get the Plaintiff's agency

complaints dismissed.  They caused great prejudice to the Plaintiff, namely two years and

hundreds of hours of legal work.  Moreover, despite moving this Court for an order to

compel arbitration, the Defendants, now that this action has been stayed without the

issuance of such order, have all too predictably gone radio silent rather than contacting

the Plaintiff to discuss the plan to move forward with the arbitration.  It is this litigation

gamesmanship that the Court of Appeals for the Second Circuit has castigated.  Because

of the need to protect its Courts from this kind of bad-faith litigation conduct, the Second

Circuit draws a distinction between waiver, estoppel or other defenses to arbitration that

are not conducted in the context of litigation and those that are. Whether litigation

conduct constitutes a waiver of arbitration is for the court – not the arbitrator – to decide.

Because the Defendants took action potentially waiving arbitration in the context of

litigation, Second Circuit precedent requires that  this Court – and not an arbitrator–

decide whether the Defendants waived arbitration.  Moreover, under the terms of Section

4 of the Federal Arbitration Act, the Plaintiff has the right to, and has demanded, a jury

trial of that issue.

***2. Despite determining that the question of whether Defendants' non-litigation conduct constitutes a waiver of arbitration is for an arbitrator to answer, Magistrate Judge Lehrburger answered the question himself anyway, tainting a future arbitrator's consideration of this very question.***

Magistrate Judge Lehrburger found that it was for an arbitrator –not this Court– to decide if Defendants' conduct in June 2023 waived arbitration because that conduct was outside the context of litigation:

> *"Accordingly, Herman's waiver argument is for the arbitrator, not the Court, to decide."*

Decision and Order, page 5.

However, shockingly, in his footnote to that very statement, Magistrate Judge Lehrburger decided the question himself anyway:

> *"Defendants did not refuse to arbitrate. Rather, they rejected mediation, a precursor to arbitration, as premature. Moreover, Herman has failed to show an unjustifiable and unequivocal waiver of arbitration."*

Decision and Order, footnote 4.

As a matter of factfinding, this is clearly erroneous. Magistrate Judge Lehrburger himself recited from the Plaintiff's June 23, 2023 email to Defendants Heller and Verde in which the Plaintiff (i) invoked the arbitration procedure of Section 20 of the partnership agreement, (ii) as required by the terms of that section made a settlement proposal, and (iii) stated that the parties must now move to mediation and, if mediation is not successful, arbitration. As recited by Magistrate Judge Lehrburger, on July 11, 2023

Verde replied by email to the Plaintiff.  In that reply Verde stated that the firm would not discuss this matter further in mediation or otherwise.  Furthermore, as Magistrate Judge Lehrburger has apparently overlooked, on July 18, 2023 the Plaintiff reminded Verde that the Defendants' July 11, 2023  refusal to arbitrate constituted a breach of the partnership agreement.  Verde reiterated that the Defendants would not arbitrate.  Then, according to the Defendants, on July 20, 2023, a mere two days later, the executive committee of the firm, apparently being so fed up with the Plaintiff's demands for arbitration, voted instead to expel the Plaintiff from the firm.

Magistrate Judge Lehrburger also mischaracterized the email conversation that the Plaintiff had with the Defendants in March 2025.  He found:

> *"Indeed, Herman's later correspondence with the Firm suggests both parties believed Section 20 still governed their dispute after June 2023 and as late as March 2025. (See Dkt. 19-2 at ECF 4-10 (parties, in June 2024, negotiating mediation in accordance with Section 20 and in anticipation of a future arbitration); id at ECF 4 (Herman warning, in March 2025, if this matter "ends up before an arbitrator ... my ask will be much more than what I am proposing to settle; id at ECF 1 (Katten informing Herman, in March 2025 "you have a right and obligation to initiate mediation before pursuing any claims in arbitration").)"*

Decision and Order, footnote 4.

The fact is that in June 2024 and March 2025 the Plaintiff tried to initiate settlement discussions with the Defendants, outside the scope of Section 20.  The Plaintiff had no interest in again begging the Defendants to arbitrate – the Plaintiff had demanded arbitration in June and July 2023 but the Defendants expressly refused to arbitrate and fired the Plaintiff instead.  In June 2024 and again in March 2025, Katten partner Julie Gottshall told the Plaintiff that the Defendants would not conduct settlement discussions directly with the Plaintiff, because of the acrimony between the Defendants and the

Plaintiff.  However, she said, the Defendants would agree to mediate, but mediate only. So if mediation did not resolve this dispute, the next step would not be arbitration. Therefore the Defendants were not demanding dispute resolution under Section 20, and the Plaintiff believed that the Defendants had waived arbitration back in June 2023.  The March 2025 conversation occurred during the 90-day window that the Plaintiff had to file the Complaint after the EEOC issued the Plaintiff a right-to-sue letter.  So the Plaintiff concluded that the Gottshall's March 2025 offer to submit to (nonbinding) mediation but not (binding) arbitration was merely a ploy by the Defendants to tie up the Plaintiff in a mediation to prevent the Plaintiff from filing the Complaint on time.  Gottshall tried to intimidate the Plaintiff into mediating and giving up the Plaintiff's right to sue by saying that if (but only if) the Plaintiff did bring suit, the Defendants would move to compel arbitration, the motion would be granted, and the arbitrator would award the Plaintiff nothing because the Plaintiff's suit was baseless.  The Plaintiff countered by throwing cold water on that strategy, telling her that even if she could convince a court the Defendants had not waived arbitration, she should not be so confident about what the arbitrator would do because arbitrators sometimes have a habit of splitting the difference. I note also that this email thread constituted settlement discussions. The Plaintiff expressly reserved all rights against the Defendants, and nothing the Plaintiff said waived, or was intended to waive, any of the Plaintiff's rights.  So it is error for Magistrate Judge Lehrburger to state that the Plaintiff conceded in March 2025 that Section 20 still governed the dispute.   The meaning of this email exchange would have been cleared up had Magistrate Judge Lehrburger called the Plaintiff and the Defendants

9

to his courtroom for a hearing, but he elected to make his ruling on the motion papers only.

But the more fundamental and frankly disturbing question is why Magistrate Judge Lehrburger is making findings of fact at all. If waiver based on Defendants' conduct outside litigation is, as Magistrate Judge Lehrburger said, for the arbitrator to decide, he should not have made any factual finding at all on whether the Defendants waived arbitration, and especially without bringing the parties in for a factfinding hearing. Moreover, as set forth in the Complaint, the Plaintiff has asserted that the Defendants' refusal to arbitrate as called for by the Katten partnership agreement constitutes one in a series of breaches by the Defendants of the partnership agreement. Breach of contract would be a substantive issue for an arbitrator to consider. Any arbitrator would read all of the documents on the docket for this case, including the Decision and Order. By predetermining arbitrable issues (waiver and breach of contract), Magistrate Judge Lehrburger has severely prejudiced the independent judgment of any arbitrator who may be appointed, and as a result, the opportunity of the Plaintiff to receive a fair hearing of his claims by an arbitrator.

Furthermore, it appears that the only reason Magistrate Judge Lehrburger made this factual finding was to cut off his own *sua sponte* inquiry into a line of Second Circuit cases (which he cites in footnote 4) going back to 1957 in which the Court – rather than the arbitrator – indeed decided the question of waiver of arbitration, even when the waiver was based on conduct outside litigation. Magistrate Judge Lehrburger states:

"To the extent these cases apply, they are inapt. Defendants did not refuse to arbitrate…"

Decision and Order, footnote 4. I discuss below the fact that non-litigation conduct may also constitute a waiver for the court and not an arbitrator to decide.

So not only did Magistrate Judge Lehrburger cut off his consideration of Second Circuit precedent that would have directed this Court to hear the waiver argument in lieu of an arbitrator, he did so by making a finding of fact that both contradicted his ruling that the arbitrator was the proper person to make that finding and prejudiced the decision that the arbitrator would make.

The way for the Court to rectify these errors is to hold a summary jury trial, as required by Section 4 of the Federal Arbitration Act, to determine whether the Defendants, by both their adjudicatory and non-adjudicatory conduct, have waived arbitration. If Judge Rearden is not willing to so order, then Plaintiff requests that this Court amend and restate the Decision and Order to remove the offending language.

### 3. Magistrate Judge Lehrburger has otherwise mischaracterized facts in a way that will prejudice an arbitrator.

Magistrate Judge Lehrburger distressingly mischaracterizes the coercion that the Defendants inflicted on the Plaintiff before firing the Plaintiff as "*the parties' prelitigation negotiations regarding Herman's departure from the Firm in the summer of 2023.*" Decision and Order, pages 3–4 . Make no mistake. There were no "negotiations", only Heller and Verde's vigorous efforts to expel the Plaintiff from the firm involuntarily by illegal and extracontractual means for illegal and extracontractual

11

reasons, and the Plaintiff's equally vigorous defense of the Plaintiff's rights. Moreover, as further discussed below, the sole source for Magistrate Judge Lehrburger's insulting statement was the affidavit of the Defendants' counsel Brian Muldrew. Magistrate Judge Lehrburger should have disregarded this affidavit because Muldrew had no personal knowledge of the events he described in it.

Magistrate Judge Lehrburger also misleadingly described the arbitration agreement as applying to disputes between the firm and "former partners." Decision and Order, page 2. The arbitration agreement expressly applies to disputes involving current partners as well. This is important to note because the Defendants have argued that they refused the Plaintiff's June 2023 demand to arbitrate because it was premature in that they had not yet fired the Plaintiff.

Finally, Magistrate Judge Lehrburger described the Plaintiff's June 27, 2023 email to the Defendants requesting arbitration as follows:

*"Specifically, Herman relies on a June 27, 2023 email he sent to the individual defendants in which he extensively laid out his claims and made a $15 million settlement demand."*
Decision and Order, pages 4–5.

The Plaintiff made not a "settlement demand" but a settlement proposal. The Plaintiff did so because the Plaintiff was required by Section 20 of the Katten partnership agreement to do so as a condition to invoking Section 20: "*Prior to invoking arbitration, the initiating party must submit to the other party a written demand detailing a proposal for resolution of the dispute.*" Magistrate Judge Lehrburger's characterization of the dollar amount as a "demand" echoes the vile characterization by the Defendants in their

motion papers of this lawsuit as an attempt by the Plaintiff to "extort" money from the Defendants.

Magistrate Judge Lehrburger has peppered his opinion, issued to decide only a procedural matter, with a characterization of events that is decidedly biased in favor of the Defendants in a way that will improperly influence any arbitrator. Accordingly, Plaintiff again respectfully requests that the Court amend and restate the Decision and Order to remove the offending language.

***4. Magistrate Judge Lehrburger has improperly based statements of fact in the Decision and Order on an affidavit from the Defendants' counsel.***

In the Plaintiff's opposition to the Defendants' Motion to compel arbitration, the Plaintiff asked that this Court disregard the affidavit that the Defendants submitted in support of their motion. This is the Declaration of Brian L. Muldrew (Dkt. 15), counsel to the Defendants. As the Plaintiff has pointed out, Muldrew has no personal knowledge of the events that Muldrew described in his Declaration.

The Second Circuit does not permit attorney affidavits other than to authenticate documents or affirm procedural matters. *S. Pac. Co. v. Conway*, 115 F.2d 746, 750 (2d Cir. 1940) (attorney affidavits must be disregarded if they are not based on personal knowledge); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) (same principle, affidavits must show personal knowledge).

In the Declaration, Muldrew stated, among other things:

*"4. The discontinuance of the Aviation Finance practice group let [sic] to discussions between Defendants and Plaintiff as to Plaintiff's exit from the Firm.*

*5.  For more than four months, Katten attempt [sic] to negotiate Plaintiff's withdrawal from the Firm …"*

Magistrate Judge Lehrburger adopted that description.  As discussed above, he recounted

*"the parties' prelitigation negotiations regarding Herman's departure from the Firm in the summer of 2023."*   Decision and Order, pages 3–4 .

Magistrate Judge Lehrburger's accepting at face value statements in an affidavit from a person with no personal knowledge of the facts constitutes error.  This error is highly prejudicial to the Plaintiff.  It puts the Court's imprimatur on the Defendant's version of hotly disputed facts in a way that will prejudice any future arbitrator who reads the Decision and Order. These supposed "negotiations" from March to August 2023 go not only to the question of whether the Defendants waived arbitration, but also to most of the substance of the Plaintiff's entire case: age discrimination, coercion, intentional infliction of emotional distress, breach of contract, and retaliation.  The Defendants will argue to an arbitrator– as they have before the EEOC, NYSDHR, and EBSA– that they were exercising sound business judgment in terminating the Plaintiff's practice group, and that they tried in good faith to negotiate the Plaintiff's exit, but when that did not work out they had no choice but to terminate the Plaintiff.  What arbitrator would not be swayed by that characterization in an opinion emanating from the United States District Court for the Southern District of New York?  The Decision and Order should be amended and restated to remove the offending language.  But can this bell even be unrung?  Magistrate Judge Lehrburger's opinion has already been reported on in the legal press and appears at Justia                                       U.S.                                       Law:

https://law.justia.com/cases/federal/district-courts/new-york/nysdce/1:2025cv03162/6407
00/22/.   Any arbitrator appointed in the future will be able to find the article and the
original Decision and Order.

*5.   **Magistrate Judge Lehrburger's stay of this case violates the terms of Section 3 of
the Federal Arbitration Act because the Defendants refused the Plaintiff's demand for
arbitration.***

Section 3 of the Federal Arbitration Act provides (highlight added):

*"If any suit or proceeding be brought in any of the courts of the United States
upon any issue referable to arbitration under an agreement in writing for such
arbitration, the court in which such suit is pending, upon being satisfied that the issue
involved in such suit or proceeding is referable to arbitration under such an agreement,
shall on application of one of the parties stay the trial of the action until such arbitration
has been had in accordance with the terms of the agreement, providing the applicant for
the stay is not in default in proceeding with such arbitration."*

In Doctor's Associates, Inc. v. Distajo, 66 F.3d 438 (2d Cir. 1995), a case cited by
Magistrate Judge Lehrburger, the Court of Appeals explained that under Section 3, the
highlighted language above means that the Court may not grant a stay if the moving party
refused to go to arbitration:

*"We explained that the proviso in Sec. 3--that a stay shall be granted "providing
the applicant for the stay is not in default in proceeding with such arbitration"--referred
to a party "who, when requested, has refused to go to arbitration or who has refused to
proceed with the hearing before the arbitrators once it has commenced." "*

See also Apple & Eve, LLC v. Yantai North Andre Juice Co., Ltd. 610 F.Supp.2d 226
(E.D.N.Y. 2009):

*"In addition, there is no question that the Court has the power to consider
whether a stay is justified pursuant to 9 U.S.C. § 3, which requires that the party
requesting the stay is not "in default in proceeding with such arbitration." See Doctor's*

*Assocs. v. Distajo, 66 F.3d 438, 454-55 (2d Cir.1995); see also Satcom Intern. Group PLC v. Orbcomm Intern. Partners, L.P., 49 F. Supp. 2d 331, 339 (S.D.N.Y.1999) ("Waiver operates as `an equitable defense' and is appropriately decided by the Court."). Indeed, the question of whether a party is "in default in proceeding with such arbitration" is a "statutorily mandated inquiry in § 3 cases." Doctor's Assocs., 66 F.3d at 456. Importantly, "[o]nce having waived the right to arbitrate, that party is necessarily `in default in proceeding with such arbitration.'"...*

*"While a substantial body of caselaw has developed on the meaning of the term "default," the touchstone of that analysis appears to be the Second Circuit's 1942 decision in Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 989 (2d Cir.1942). There, the court interpreted the statute's limiting clause "to refer to a party who, when requested, has refused to go to arbitration or who has refused to proceed with the hearing before the arbitrators once it has commenced." Id.",*

Magistrate Judge Lehrburger erred in staying this case.  Under the terms of Section 3 of the Federal Arbitration Act, as interpreted by the Court of Appeals for the Second Circuit, he should not have granted the stay because the Defendants, applicants for the stay, are in fact in default in proceeding with the arbitration.  The Defendants defaulted by refusing the Plaintiff's June and July 2023 demands for arbitration under Section 20 of the Katten partnership agreement, and repeated as late as March 2025 that they were not agreeing to arbitration.  Even though it is not conduct during litigation, it is not referable to an arbitrator.

Magistrate Judge Lehrburger wrote that he was obligated because of the opinion in Smith v. Spizzirri, 601 U.S. 472 (2024) to stay this case pursuant to the terms of Section 3 of the Federal Arbitration Act.  Decision and Order, page 7.  However, that case considered only the question of whether a court had discretion to dismiss a case that the terms of Section 3 required to be stayed. The case did not involve any issue concerning the language in Section 3 that I highlighted above (“*providing the applicant for the stay is not in default in proceeding with such arbitration.*”).  The Supreme Court did not discuss this language at all, other than to include it for the sake of completeness in reproducing

16

the text of the section.   The holding of the Court of Appeals in Doctor's Associates controls.

Moreover, it is not for Magistrate Judge Lehrburger to decide on his own based on the motion papers whether the Defendants refused to arbitrate.   In the opposition to Defendants' motion, the Plaintiff requested a jury trial of this issue as required by Section 4 of the Federal Arbitration Act:   Section 4 provides in part (highlights added):

> "*If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.*"

**6. Testimony from Katten partners is required for this Court to determine if the Defendants refused to arbitrate or waived arbitration by litigation conduct, mandating the immediate disqualification of Katten as counsel to the Defendants pursuant to the advocate-witness rule.**

Unless this Court determines from a review of the Position Statements that the Defendants submitted in the adjudicatory proceedings at the EEOC, NYSDHR, and EBSA that the Defendants have waived arbitration, testimony at a summary jury trial to be held pursuant to Section 4 of the Federal Arbitration Act from Katten partners Heller and Verde, and from the other Katten partners involved in the litigation conduct — namely Julie Gottshall, Brian Muldrew, and Kate Saracene, will be required to determine if the Defendants have waived or refused arbitration. Their testimony will be necessary to

determine the intent of Defendants in submitting the Position Statements and in the June and July 2023 email exchanges.

Under the advocate-witness rule, when an attorney is likely to be a necessary witness, the attorney and his firm must be disqualified. See Murray v. Metropolitan Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009). Because the testimony of the Katten partners referred to in the preceding paragraph is indispensable to resolving waiver, Katten must be disqualified from representing the Defendants in this matter.

Magistrate Judge Lehrburger found that the advocate-witness rule would indeed be relevant, but only closer to trial, which he said would be some time away if it occurred at all.  He cited a line of cases for the proposition that the advocate-witness rule addresses trial testimony only, and not pre-trial proceedings.  But if there must be a summary jury trial under Section 4 of the Federal Arbitration Act to determine if the Defendants have waived arbitration, that trial will occur now, not at some distant future time. So it is not premature to disqualify Katten Muchin Rosenman LLP from representing the Defendants.

**7.  *Magistrate Judge Lehrburger's stay of this case violates the terms of Section 3 of the Federal Arbitration Act because the Court's issuance of a motion to compel arbitration is a condition precedent to the power of the Court to stay the action.***

Magistrate Judge Lehrburger stayed this case even though he could not issue an order compelling arbitration because, as the Defendants and he readily concede, this court has no power to compel arbitration in Chicago, the venue prescribed in the arbitration agreement.  He leaves the parties with the message, best of luck to you, please let me

know when the arbitration is finished.  And yet the Plaintiff continues to be of the view that the Defendants have no intention of arbitrating at all.  Because the longer they do not arbitrate, the longer they do not pay anything.  Now, if the Defendants refuse to arbitrate, Magistrate Judge Lehrburger has left the Plaintiff limited recourse.  If the Plaintiff files a motion with the U.S. District Court for the Northern District of Illinois to compel arbitration in Chicago, if that can even be done while this case is pending, the Plaintiff apparently must abandon the argument that the Defendants waived arbitration. Moreover, that court may not even have personal jurisdiction over Defendants Heller and Verde.  Conversely, if the Plaintiff accedes to move the venue of the arbitration to New York City, then this court may then compel arbitration.  But that does not solve the problem that the Plaintiff would have to abandon the waiver argument.  There is also another problem.   As discussed herein, Magistrate Judge Lehrburger may have irreversibly tainted the judgment of any future arbitrator, particularly one in New York who probably regularly appears before this Court.  The only way to get a fairer arbitration might be to have arbitration in Chicago after all.   So besides the mandates of Sections 3 and 4 of the Federal Arbitration Act, in order to avoid this procedural thicket and give the Plaintiff impartial justice, this Court should hold a jury trial to determine whether the Defendants have waived arbitration. A venire pool can be vetted for bias more thoroughly than a list of arbitrators.

Moreover, the authority on which Magistrate Judge Lehrburger rests his decision that this Court may stay this case without ordering arbitration is thin.  He cites only DaPuzzo v. Globalvest Management Co, 263 F. Supp.2d 714  (S.D.N.Y. 2003), quoting Judge Marrero's holding: "*Where an arbitration agreement contains a forum selection*

*clause, a court may not order arbitration to occur beyond its district, but may order a stay.*" Decision and Order, page 7. So apparently neither the Supreme Court nor the Court of Appeals has ruled on this point, and Magistrate Judge Lehrburger has to go back 22 years even to find an opinion from this Court. In that opinion, Judge Marrero also stated:

*"The Court has found no controlling authority, and the parties have supplied none, squarely addressing the question as to whether § 3 provides a basis for a court to stay litigation in a case where it cannot compel arbitration …"*

263 F. Supp.2d at 735.

*"Admittedly, there is limited authority directly on point with respect to the narrow issue here presented. Hence, the Court acknowledges that the interpretation it poses in this regard is not clearly settled in law."*

263 F. Supp.2d at 741.

Instead Judge Marrero based his decision on his inherent discretion to stay litigation. He found that ordering the stay would not prejudice the party objecting to the stay. 263 F. Supp.2d at 742-3. This case is very different. As discussed above in this section, a stay would effectively compel the Plaintiff to agree to arbitrate in this district in the face of an opinion that has already poisoned the local pool of arbitrators. Accordingly, the Plaintiff respectfully requests that Judge Rearden exercise her inherent discretion <u>not</u> to stay this case and therefore to lift the stay imposed by the Decision and Order.

**8.    Magistrate Judge Lehrburger also has made statements about the Plaintiff's procedural arguments that will bias an arbitrator.**

On page 8 of the Decision and Order, Magistrate Judge Lehrburger stated:

*In a last-ditch effort to avoid a stay of this action, Herman raises a series of procedural arguments, none of which have any merit.*

This sentence not only dismisses the procedural arguments.  It also – with the phrase "last-ditch"-- gratuitously suggests that the Plaintiff's entire preceding argument against arbitration constituted an act of desperation.  Magistrate Judge Lehrburger seems to be looking for opportunities to send the Plaintiff's case to an arbitrator with an official imprimatur of disapproval.

**9.    The failure of the Defendants to provide the Plaintiff copies of the unpublished opinions cited in their motion is not "of no consequence" or "a trivial technicality."**

As for those procedural issues, the Plaintiff objected that the Defendants had failed to comply with the requirement of Local Rule 7.2 to provide a *pro se* plaintiff copies of the unpublished opinions cited by the Defendants in their motion papers. Magistrate Judge Lehrburger adopted the erroneous statement by the Defendants that they did not have to comply with this rule because the Plaintiff surely had access to the cases himself because the Plaintiff's opposition to the motion cited an unpublished opinion. Magistrate Judge Lehrburger further called the Defendants' failure "of no consequence" and "a trivial technicality" because Plaintiff is a lawyer. The fact is that although the Plaintiff has access to Westlaw and Lexis through his current employer, the Plaintiff may use those services only on client matters and other business of his employer. The Plaintiff

did not have access to Lexis or Westlaw to assist in research on the Plaintiff's opposition to the motion.  The Plaintiff was able to include an unpublished opinion in the opposition because search queries on Google or ChatGPT will on random occasions produce an unpublished opinion. However, finding a specific unpublished opinion by Westlaw citation online usually is unsuccessful, because those opinions are behind the Westlaw paywall.    The Decision and Order itself is suffused with citations to unpublished opinions which the Plaintiff cannot access.    That lack of access compromises the Plaintiff's ability to respond to the Decision and Order.

**10.  The Plaintiff's motion for a default judgment.**

The Plaintiff moved for a default judgment on the grounds that the Defendants did not respond to the Complaint. Under the Federal Rules of Civil Procedure, the only two ways to respond to a Complaint are to answer it and to file a motion to dismiss. Magistrate Judge Lehrburger denied the Plaintiff's motion in part on the grounds that "*answering the Complaint would have been inconsistent with Defendants' request to stay the case and compel arbitration.*"  Decision and Order, page 10.   This is incorrect as a matter of law.  That a dispute is arbitrable under an arbitration agreement is a defense which may be asserted in an answer to a complaint.  See e.g. S & R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 83–84 (2d Cir. 1998).

**11.  The Plaintiff's motion to supplement the complaint**

Magistrate Judge Lehrburger denied without prejudice the Plaintiff's motion to supplement the Complaint to add a charge of defamation as moot, because he stayed the

case.  For the reasons stated above, the Plaintiff has asked this Court to lift the stay.  If the Court does so, the Court should also grant the motion to supplement the Complaint.

### *12.  Pretrial conference*

Magistrate Judge Lehrburger deferred the Plaintiff's request for a pretrial conference to after the stay is lifted.  Because the Plaintiff has asked that the stay be lifted, the Plaintiff renews the request for a pretrial conference.

### *13. Unauthorized redaction of documents*

Magistrate Judge Lehrburger asserted incorrectly that the Plaintiff alleged that the Defendants did not follow the rules for filing documents under seal.  The Plaintiff actually alleged that the Defendants did not file the rules for redacting documents.  Filing under seal and redacting documents are two separate matters.  Rule 9 of Judge Rearden's Local Rules for civil cases required that the Defendants consult the Plaintiff before redacting documents.  The Defendants failed to consult the Plaintiff before redacting Exhibits 1 and  3 to the Declaration accompanying their motion.

**Relief Requested**

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1.      Lift the stay on this action imposed by Magistrate Judge Lehrburger.

2.      Hold a summary jury trial to determine whether one or both of (i) Defendants' litigation conduct and (ii) Defendants' refusal to arbitrate on demand shall result in one or both of (i) denial of the motion to stay this action pending arbitration  and (ii) waiver of arbitration.

4.      Disqualify Katten Muchin Rosenman LLP from representing the Defendants.

5.      Amend and restate the Decision and Order to remove the prejudicial language.

6.       Hold a pre-trial conference as the Plaintiff requested.

7.      Order other appropriate relief.


Dated: September 7, 2025                    Respectfully submitted,

Morristown, New Jersey                      */s/ Stewart B. Herman*

                                            Stewart B. Herman

                                            1 Kings Court

                                            Morristown NJ 07960

                                            201-572-1779

                                            stewartherman1118@gmail.com