**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
:
STEWART B. HERMAN,                                                       :
:
Plaintiff,                                                               :
:
v.                                                                       :
:
KATTEN MUCHIN ROSENMAN LLP, NOAH S. HELLER,   :
AND MICHAEL I. VERDE,                                                    :
:
Defendants.                                                              :
—-------------------------------------------------------------------------x

Case No. 1-25-cv–03162-JHR-RWL

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO SET ASIDE JUDGE LEHRBURGRER'S DECISION AND ORDER STAYING THIS ACTION**

1.      <u>Judge Lehrburger improperly stayed this case because the condition precedent to granting the stay under Section 3 of the Federal Aviation Act was not satisfied.</u>

Plaintiff submits this reply to Defendants' Memorandum filed September 22, 2025. Having no power to compel arbitration outside this district, Judge Lehrburger nevertheless stayed this case pending arbitration, a power that Congress granted in Section 3 of the FAA. However, he did so in violation of Section 3 as interpreted by the Court of Appeals for this Circuit in an opinion that Defendants agree is controlling precedent. Other Courts in this Circuit have applied that opinion to justify denying a stay.

1

Section 3 provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, ==providing the applicant for the stay is not in default in proceeding with such arbitration.=="

In *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438 (2d Cir. 1995), the Court explained that the highlighted language in Section 3 prohibits a court from granting a stay if the movant refused a demand to arbitrate:

"We explained that the proviso in Sec. 3--that a stay shall be granted "providing the applicant for the stay is ==not in default in proceeding with such arbitration"--referred to a party "who, when requested, has refused to go to arbitration== or who has refused to proceed with the hearing before the arbitrators once it has commenced."

District courts in this Circuit have acknowledged that in deciding a motion to stay pending arbitration, a court <u>must</u>, pursuant to *Doctor's Associates*, consider an allegation that the movant previously refused the nonmoving party's request to arbitrate. See *Apple & Eve, LLC v. Yantai North Andre Juice Co., Ltd.*, 610 F.Supp.2d 226 (E.D.N.Y. 2009):

"In addition, ==there is no question that the Court has the power to consider whether a stay is justified pursuant to 9 U.S.C. § 3, which requires that the party requesting the stay is not "in default in proceeding with such arbitration==." See Doctor's Assocs. v. Distajo, 66 F.3d 438, 454-55 (2d Cir.1995); see also Satcom Intern. Group PLC v. Orbcomm Intern. Partners, L.P., 49 F. Supp. 2d 331, 339 (S.D.N.Y.1999) ("Waiver operates as `an equitable defense' and is appropriately decided by the Court."). Indeed, ==the question of whether a party is "in default in proceeding with such arbitration" is a "statutorily mandated inquiry in § 3 cases==." Doctor's Assocs., 66 F.3d at 456. Importantly, "[o]nce having waived the right to arbitrate, that party is necessarily `in default in proceeding with such arbitration.'"...

"While a substantial body of caselaw has developed on the meaning of the term "default," the touchstone of that analysis appears to be the Second Circuit's 1942 decision in Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 989 (2d Cir.1942). There, the court interpreted ==the statute's limiting clause "to refer to a party==

2

*who, when requested, has refused to go to arbitration or who has refused to proceed with the hearing before the arbitrators once it has commenced." Id."*

Defendants agree that *Apple & Eve* is good law. So why did Judge Lehrburger not rule for Plaintiff? Because he found that "*Defendants did not refuse to arbitrate… they rejected mediation, a precursor to arbitrate, as premature.*" As discussed below, this conclusion is clearly erroneous.

Moreover, Defendants engaged in vigorous litigation before three agencies (EEOC, DOL, and NY State Division of Human Rights) to dismiss Plaintiff's claims. This constitutes "litigation conduct" which Judge Lehrburger and Defendants agree precludes a court from granting a motion to compel arbitration or to stay a case pending arbitration. Contrary to Defendants' assertion, activity before agencies may constitute litigation activity. More below.

2.   Defendants deliberately refused Plaintiff's demand to arbitrate.

Section 20 of the partnership agreement, broadly worded, requires that any dispute between a current or former partner and another current or former partner or the firm be arbitrated, such arbitration to be preceded by a mediation to see if that can resolve the dispute. Declaration of Brian Muldrew, ECF 15, Exhibit 1.

Defendants refused to arbitrate. Complaint, ECF 1, Attachment 1 paras. 16, 86, 87, 91, 131, 140. Plaintiff's Memorandum, ECF 18, pp. 17 –24. Plaintiff's Affidavit, ECF 19, paras. 7 – 8, Exhibit 1, Exhibit 2.

•On June 27, 2023, Plaintiff sent Heller and Verde a lengthy email accusing them of (i) age discrimination under the ADEA and NY Human Rights Law, (ii) seeking to

3

prevent Plaintiff from collecting his defined-benefit pension in violation of ERISA, (iii) breach of the partnership agreement, and (iv) intentional infliction of emotional distress. Plaintiff invoked the arbitration procedure of Section 20.  <u>Exhibit 1</u> to Plaintiff's Affidavit, ECF 19-1, is the email traffic.  As recited by Judge Lehrburger, in the email Plaintiff stated:

*"Therefore I demand immediate good faith settlement discussions conducted by a mediator and (barring a settlement) arbitration, all as provided in the Section 20 of the firm's Partnership Agreement."*  ECF 19-1, page 29.  Decision and Order, ECF 22, page 4.

As recited by Judge Lehrburger, on July 11, 2023 Verde replied by email to Plaintiff.  In that reply Verde stated that the firm would not discuss this matter further in mediation or otherwise.

•On July 18, 2023 Plaintiff emailed Heller and Verde stating that Verde's July 11, 2023 refusal to mediate, arbitrate or otherwise discuss this dispute with any third party constituted a breach of Section 20.    Plaintiff stated:

*"And you are compounding your misdeeds now by announcing you will not comply with Section 20 of the Partnership Agreement, which requires that the firm mediate and then arbitrate any dispute with a partner."*  ECF 19-1, page 8.

*"Section 20 obligates the firm to conduct settlement discussions with a partner before a mediator and then proceed to binding arbitration.*  ECF 19-1, page 14.

•On July 20, 2023, a mere two days later, Katten's Executive Committee, apparently being so fed up with Plaintiff's demands for arbitration, voted instead to expel Plaintiff from the firm.   Declaration of Brian Muldrew, ECF 15, para. 9.  More below.

•Defendants admit that in July 2023, they did refuse Plaintiff's demands to arbitrate.  They justify that refusal on the specious grounds that Plaintiff's claims had not

4

yet "ripened." Defendants' Reply Memorandum, ECF 20, page 8. They claimed they did not have to "mediate and arbitrate every time a partner has a complaint about his/her compensation or treatment." Id. Obviously, however, Plaintiff's June 27 email made serious charges. Did Katten think the dispute could not be ripe until Katten fired Plaintiff? That would violate Section 20, which expressly requires that the firm go to arbitration for any dispute between the firm and any <u>current partner</u> as well as former partner. Arbitration agreements must be enforced as written.

•Defendants' refusal to arbitrate when demanded was complete in July 2023. From that point on, Defendants would not be entitled to a stay pending arbitration under Section 3 of the FAA. Nevertheless, their refusal to arbitrate continued. Also, they separately waived any stay by persistently litigating Plaintiff's claims in other forums. In June 2024, Katten partner Julie Gottshall, as counsel to Defendants, told Plaintiff in writing, in response to his settlement overtures, that the Defendants had no intention of arbitrating. Gottshall said that they would discuss settlement, but only through a mediator, and that Plaintiff should not interpret this to mean Defendants were consenting to arbitration. Gottshall further stated in writing that Defendants intended instead to vigorously contest Plaintiff's allegations at the NYSDHRs. More below.

•Even in their current Memorandum, at page 12, Defendants reveal their mindset. Despite their May 16, 2025 letter to Plaintiff demanding arbitration and their motion to this Court to compel arbitration (which they knew this Court had no power to grant), they remain intent on avoiding arbitration:

*"It is Herman, as plaintiff, who must pursue his claims; Defendants have no obligation to invite him to what they expect, based on his prior conduct, will be a pointless mediation followed by a time-consuming, expensive, and meritless arbitration."*

Defendants have <u>never</u> had an arbitration with a partner or former partner. They were not going to start with Plaintiff. As Defendant Verde told Plaintiff by telephone on May 25, 2023, the firm had <u>always</u> succeeded in forcing a partner whom Heller wanted to expel from the firm to resign and waive of any claims. Complaint, ECF 1, Attachment 1 para. 84. This is why on July 20, 2023, according to Defendants, Heller secretly had the Executive Committee approve expelling Plaintiff from the partnership. And why on August 1, 2023 Heller ratcheted up pressure on Plaintiff by suspending Plaintiff without pay (and without cause, in violation of the partnership agreement) and (armed by the Executive Committee with expulsion power) threatening to expel Plaintiff if Plaintiff did not immediately agree to resign and waive his claims.

Thus the condition to granting a stay under Section 3 of the FAA was not satisfied and the stay should be lifted. Based on the evidence presented to the Court, and the requirement to make any inference of fact against the movant for the stay, *Nicosia v. Amazon.com*, 834 F.3d 220 (2d Cir. 2016), any finding that Defendants did not refuse to arbitrate is clearly erroneous. Nevertheless, if Judge Rearden believes a question exists as to whether Defendants refused to arbitrate, Plaintiff demands a jury trial under Section 4 of the FAA or other full and complete factfinding by this Court. Judge Lehrburger did not hold a hearing. Defendants should produce internal emails between Heller, Verde and any member of the Executive Committee; and minutes of the Executive Committee meeting at which the Executive Committee voted to expel Plaintiff, which will show that Defendants terminated Plaintiff immediately after, and because, Plaintiff demanded

arbitration. Defendants and the members of the Executive Committee could also be deposed or testify in open court under Federal Rule of Civil Procedure 43(c).

Consider further the vote of the Executive Committee on July 20, 2023 to expel Plaintiff. Under the terms of the partnership agreement, expulsion of a partner may be done only by vote of the Executive Committee. The Executive Committee consisted of the following Katten partners:

> Noah Heller
> Roger Furey
> Michael Jacobson
> Derek Ladgenski
> Kimberly Smith
> Gil Soffer
> Mark Solomon
> Lance Zinman
> David Crichlow
> Ronni Davidowitz
> Christine Fitzgerald.

The partnership agreement provides that the Executive Committee may take action only at a meeting or by written consent. The expulsion of a partner is the most serious and extraordinary action the Executive Committee may take. Clearly the members of the Executive Committee would not have voted to expel Plaintiff unless Heller and Verde had presented all of the facts, up to date, to the members first for their consideration. Those facts would include that Plaintiff had twice invoked the Section 20 arbitration procedure and Verde had twice rejected it, including just two days before. Heller and Verde would

have given the Executive Committee a copy of the email exchange in which Plaintiff stated his extensive legal claims against Defendants and demanded arbitration, and Verde refused. The members of the Executive Committee, after deliberating this issue, could have decided to proceed to arbitration as Plaintiff had demanded. They instead voted to authorize Heller to expel Plaintiff from the partnership if Plaintiff continued to refuse to resign. This is the only conclusion a reasonable trier of fact could reach.

2.  Responses to statements in Defendants' Memorandum.

a.  Plaintiff did not "rebuff[ ] efforts to mediate as required by the parties' partnership agreement." Memorandum, p. 2.

Section 20 of the partnership agreement requires that disputes be arbitrated, with an attempt at mediation to precede arbitration. Defendants were careful not to commit to arbitration.

On June 6, 2024, Gottshall emailed Plaintiff:

*"Regarding settlement discussions, the Firm believes we can most productively discuss resolution of your claims in the context of mediation. As you pointed out, Section 20 of the Partnership Agreement (attached) anticipates mediation prior to any arbitration hearing, and the Firm will be invoking arbitration if the NYDHR proceedings continue beyond the investigation stage. As such, it makes sense to utilize mediation now. "*
Plaintiff's Affidavit, ECF 19– 2.

Gottshall could have demanded arbitration under Section 20. But she only threatened to invoke arbitration in the future. Defendants deliberately held back on moving for arbitration – if they ever would– until they first exhausted their efforts to

8

defeat Plaintiff's agency complaints. This is not an invocation of Section 20 but gamesmanship.

On June 12, 2024, in the same email thread, Gottshall stated:

*Additionally, please note that Section 20 of the Partnership Agreement does not obligate the Firm to provide a written settlement offer before suggesting mediation. Rather, it requires the "initiating party" to submit a written demand prior to "invoking arbitration." At this point the Firm is simply agreeing to mediate, as you have requested.*

Again, Gottshall made it clear that Defendants did not agree to arbitration, as required by Section 20, only to mediation. This is not invocation of Section 20; it is a rejection of it.

She further stated in the June 12, 2024 email:

*As you consider how to proceed, please understand the Firm intends to vigorously defend itself before the NYDHR and is confident the agency and any other factfinder will determine that you are neither a statutorily-protected employee nor a victim of any unlawful action. We are offering to undertake mediation now as a means of quickly concluding this dispute in a way that will provide you with some money -- something we do not expect you to receive if the matter is arbitrated or otherwise adjudicated.*

This again shows the clear choice of Defendants in June 2024 to try to avoid arbitration and contest Plaintiff's claims in another forum. Defendants would first "vigorously defend" themselves in one forum. Then if, and only if, they lost their argument that Plaintiff was neither a protected employee nor a victim of unlawful action would Plaintiffs invoke arbitration. This is not only a further repudiation of Defendants' right to invoke Section 20. It is also intentional forum shopping, litigation conduct which the cases cited by Defendants and Judge Lehrburger say will result in a waiver of a later right to invoke arbitration.

On May 16, 2025, Defendants, faced with the impending deadline to answer Plaintiff's Complaint, changed their tone and choice of words radically. In the letter from

9

Brian Muldrew to Plaintiff dated that date (ECF 15-3), Defendants invoked Section 20 with lawyerly precision:

*"Section 20 of the Partnership Agreement requires that "any claim, demand or dispute" arising out of, or relating to: (i) the Partnership Agreement; or (ii) any Partner or former Partner's relationship to the Firm or to another Partner "shall be resolved solely through binding arbitration pursuant to the FAA."*

Yet on June 12, 2024, Gottshall had written to Plaintiff that "*the Firm intends to vigorously defend itself before the NYDHR.*" Why didn't Gottshall invoke arbitration on June 12, 2024 if – as Defendants now claim– any claim, demand or dispute "***shall***" be resolved "***solely***" through binding arbitration? From June 2023 until May 2025, Defendants intentionally rejected arbitration, and vigorously fought Plaintiff's claims in other forums, until they were faced with a worse alternative (answering Plaintiff's Complaint). Defendants could have had their arbitration in June 2023 when Plaintiff demanded it. But in July 2023 the Executive Committee rejected arbitration. It instead told Heller to force Plaintiff to waive his claims against the firm, and gave Heller the weapon of expulsion with which to do it.

b.  <u>Defendants and Judge Lehrburger improperly apply *Smith v. Spizzirri*, 601 US 472 (2024)</u>.

The Memorandum and Judge Lehrburger's decision quote *Smith v. Spizzirri*:

*"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, [Section] 3 of the FAA **compels** the court to stay the proceeding."*

ECF 28, 12.

10

Defendants and Judge Lehrburger conclude that this passage required that Judge Lehrburger stay this case. This misreads *Smith*. The Court resolved an intercircuit conflict in which some courts stayed a case pending arbitration but others thought they could alternately dismiss such a case. The Court held that such cases should be stayed, not dismissed. Again, the choice was <u>stay</u> or <u>dismiss</u>. The choice was not <u>stay</u> or <u>decline to stay</u>. The Court was not called to answer the question, and did not answer the question, of whether a movant in default was entitled to a stay at all.

c.  <u>DOL did pursue Plaintiff's claims</u>.

Defendants stated, "DOL did not pursue Herman's claims." ECF 28, 3. Not true. In fact, these claims resulted in a settlement between Katten and EBSA, memorialized in a letter from Renee Lercher, Chief Financial Officer of Katten to EBSA dated October 27, 2023. In that letter, Katten admitted that it had improperly characterized in required annual filings to EBSA whether or not the Katten Muchin Rosenman LLP Cash Balance Pension Plan for partners was an ERISA plan, and agreed to correct its filings and inform the partners. Complaint, ECF 1, Attachment 1 paras. 124–128. Affidavit of Plaintiff, Exhibit 4, ECF 25-4.

d.  <u>Actions before an agency can constitute "litigation conduct."</u>

A motion for an order to compel arbitration or to stay pending arbitration will fail if the movant conducts sufficiently substantial litigation activity beforehand. Defendants (but not Judge Lehrburger) assert that agency conduct is not litigation conduct and whether it constitutes a waiver of arbitration is for an arbitrator to decide.

Defendants misread the two cases they cite. The later case, which discusses the earlier one, is *Palmer v. Starbucks Corp.*, 23 Civ. 6951 (JPC), dated May 28, 2024. (Defendants cite 735 F.Supp. 3d 407 which may not be correct.) This Court held: "*merely responding to a complaint made to an administrative agency, or engaging in the minimal level of litigation undertaken by [Defendants], does not rise to the substantial, prejudicial level of activity required to demonstrate waiver in this Circuit.*" Defendants did much more than that. As Gottshall stated, "As you consider how to proceed, please understand the Firm intends to vigorously defend itself before the NYDHR and is confident the agency and any other factfinder will determine that you are neither a statutorily-protected employee nor a victim of any unlawful action." Defendants vigorously litigated Plaintiff's claims in several forums. Complaint, ECF 1, Attachment 1 paras. 109–116. Declaration of Brian Muldrew, ECF 15, para. 10. Defendants submitted two briefs, along with an affidavit of Katten aviation practice group head Timothy Lynes, in November 2023 and May 2024. Plaintiff's case differed from most others because Plaintiff had been a law firm partner. Defendants therefore vigorously argued for dismissal of Plaintiff's complaints not only on the grounds that Defendants had not discriminated against Plaintiff, but also on the grounds that Plaintiff was not entitled to the protection of federal or state anti-discrimination law because that law covered only employees, and not "owners", of businesses. Complaint, ECF 1, Attachment 1 paras. 117--123, 129, 130. Whether the partner is an "owner" or "employee" depends on a six-part test articulated by the Supreme Court and interpreted by many other courts. Defendants fully briefed this issue, as did Plaintiff. The briefs led to a ruling by Caroline Downey, general counsel of the NYSDHR, (i) that Plaintiff was an

employee for purposes of anti-discrimination law and (ii) therefore denying Defendants' motion to dismiss.  Defendants made the same unsuccessful arguments to the EEOC in moving to dismiss Plaintiff's complaint there.

At the same time, Defendants litigated separate claims that Plaintiff had made before EBSA for breaches of ERISA.  These claims relied on a complex analysis of whether Katten's partner-only pension plans were subject to ERISA.  The claims resulted in a settlement between Katten and EBSA, memorialized in the letter from Renee Lercher described above.

3. <u>Conclusion.</u>

Judge Lehrburger erred in staying this case pending arbitration.  Under the terms of Section 3 of the FAA, as interpreted by the Court of Appeals for this Circuit, which interpretation has been followed by District Courts in this Circuit, Defendants, movants for the stay, violated the condition to the grant of the stay set forth in Section 3 that the movant not previously have refused to arbitrate. Defendants did intentionally, <u>refuse Plaintiff's demand for arbitration</u> under Section 20 of the Katten partnership agreement. Therefore Plaintiff requests that Judge Rearden lift Judge Lehrburger's stay.

Dated: September 29, 2025                                   Respectfully submitted,

Morristown, New Jersey                                      */s/ Stewart B. Herman*
                                                            Stewart B. Herman
                                                            1 Kings Court
                                                            Morristown NJ 07960
                                                            201-572-1779
                                                            stewartherman1118@gmail.com

13

## **WORD COUNT CERTIFICATE**

Pursuant to Local Civil Rule 7.1, I hereby certify that this document complies with the word-count limitations prescribed under this Court's local rules. This document was prepared using Google Docs and contains 3,488 words, not including material not counted under Local Rule 7.1.

Dated: September 29, 2025

Morristown, New Jersey  */s/ Stewart B. Herman*
 Stewart B. Herman
 1 Kings Court
 Morristown NJ 07960
 201-572-1779
 stewartherman1118@gmail.com